IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ) | |
| JAMARIO PRUITT, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 12 C 6829 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| TARRY WILLIAMS, Warden, ) | |
| Stateville Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## **OPINION AND ORDER**

Jamario Pruitt, currently in the custody of Tarry Williams, warden of Stateville Correctional Center in Joliet, Illinois, is serving a thirty-three-year sentence for first-degree murder and a consecutive six-year sentence for aggravated battery with a firearm.[1] He has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons stated below, his petition is denied.

## BACKGROUND[2]

### I.  Factual Background

Shortly after midnight on July 6, 1999, near the intersection of Sacramento and Fifth Avenue in Chicago, Illinois, Linda Winters was fatally shot in the neck and Joseph Jackson was shot in the wrist. At the time of the shooting, there was a territorial dispute in this area between

---

[1] The petition names Michael P. Atchison, warden of Menard Correctional Center, as respondent. When Pruitt was transferred from Menard Correctional Center to Stateville Correctional Center, Tarry Williams, warden of Stateville, replaced Atchison as the respondent. (Dkt. 16); *see* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

[2] The facts in this section are derived from the state court opinions and the record. For a habeas review, "state court factual findings that are reasonably based on the record are presumed correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence." *Kaczmarek* v. *Rednour*, 627 F.3d 586, 589 (7th Cir. 2010) (citations omitted); *see also* 28 U.S.C. § 2254(e)(1). The court thus adopts the state courts' recitation of the facts.

the Gangster Disciples and the New Breed Gang. Pruitt and his two codefendants were members of the New Breed Gang. During the investigation of the shooting, Pruitt and one of his codefendants, Sedgewick Grover, were identified as shooters. (Exh. A at 2.) The key witnesses at trial included Rontral Lee, a bystander at the shooting and a member of the Gangster Disciples; Shamyra Harris and Eneshia Davis,[3] bystanders at the shooting; Jackson; Cedric Grant, a bystander at the shooting; and Genesha Richardson, a friend of Pruitt. As discussed below, the witnesses' accounts during the police investigation, the grand jury proceedings, and trial were inconsistent. (*Id.* at 2–7.)

### A. Police Investigation and Grand Jury Testimony

Detective Don Wolverton, a detective who investigated the shooting, testified by stipulation at trial that he interviewed Lee on the day of the shooting. (Exh. O at 1221.) In this interview, Lee stated that he saw two armed African-American men at the shooting. Lee further stated that he heard about nine shots before he ran upstairs to his aunt's apartment with Harris and Davis. Approximately one minute after the shooting began, Lee returned downstairs to help Winters, who was lying on the street. Thirteen more shots were fired. The two shooters then ran away. Contrary to his trial testimony, Lee told Detective Wolverton that he was not able to identify the shooters because the shooting happened too quickly for him to get a good look. (Exh. A at 3–4.) Approximately one week after the shooting, Lee identified Pruitt as one of the shooters to detectives and in a lineup. (*Id.* at 2.)

Harris also identified Pruitt as the shooter during the police investigation. She selected him out of a lineup in December 1999, about five months after the shooting. Her identification was consistent with her trial testimony. (*Id.* at 4.)

---

[3] Eneshia Davis is also referred to as "Anisha Harris" and "Eneesha Davis" at various places in the record. (*See, e.g.*, Exh. N at 183, 232.)

Assistant State's Attorney ("ASA") Thomas Darman testified that he took Jackson's written statement on December 14, 1999. (Exh. O at 112.) In that statement, Jackson identified Pruitt as the shooter, which was contrary to his testimony at trial. (Exh. A at 5.) Detective Thomas Flaherty, another detective who investigated the shooting, also testified that Jackson identified Pruitt as a shooter in a lineup on December 15, 1999. (Exh. O at 1088.) Jackson testified before the grand jury that he saw two armed men, including Pruitt, at the shooting. (Exh. A at 5.) Jackson knew Pruitt. Jackson testified that Pruitt said that he did not mean to shoot Jackson or Winters and that he was not going to go to jail for it. (*Id.*)

Former ASA Jeff Levine testified that he took Grant's statement on December 15, 1999. In this statement and contrary to his testimony at trial, Grant identified Pruitt as the shooter. Grant further stated that he had not been threatened or promised anything in exchange for his statement, which contradicted his testimony at trial that while at the police station, he was offered help with pending charges against him and heard a detective tell a sergeant that if Grant did not cooperate, they would "stitch him." Before the grand jury, Grant testified that he saw Pruitt shoot Jackson and Winters and that no threats or promises were made in exchange for his statement.[4] (*Id.* at 6.)

Detective Flaherty testified that on December 13, 1999, Pruitt told him and Detective Tracy, a detective investigating the shooting, that he spent the entire night of the shooting at Richardson's house. Pruitt further stated that three individuals (Elijah Goudy, Eddie Hill and Devon Chamberlain) accompanied him to Richardson's house and spent the night there as well. (*Id.* at 7.) This contradicted the subsequent trial testimony of Richardson, who testified that she spent the night at Pruitt's house. (*Id.*)

---

[4] At trial, ASA David Williams published Grant's grand jury testimony, which directly contradicted Grant's testimony at trial. (Exh. A at 6.)

3

B.  **Trial Testimony**

At trial, Lee testified that he had known Pruitt for approximately six years at the time of the shooting. (*Id.* at 2.) Lee testified that on that day, he was with Harris and Davis across the street from the victims. According to Lee's trial testimony, Pruitt and three other men drove up in a black car through an alley one block away from the intersection where the shooting occurred and exited the car. Pruitt and two others walked toward the intersection and began shooting— first at Lee, Harris, and Davis, and then at the two victims (Winters and Jackson) across the street. Lee, Harris, and Davis ran into a nearby building where Lee's aunt lived. (*Id.* at 2–3.) Harris's account of the shooting on the street was essentially the same as Lee's account. (*Id.* at 4.)

Both Davis and Jackson testified at trial that they never saw the shooters. (*Id.* at 4–5.) Grant testified that he was near the scene of the shooting but did not see the shooters. (*Id.* at 6.) Grant also testified that knew Pruitt and that he did not see Pruitt at the shooting. (*Id.*)

Lee further testified at trial that after the shooting on the street, he exited the building with Harris and Davis and drove away. According to Lee, the black car from the alley chased them for approximately nine blocks while Pruitt leaned out of the passenger side window and shot two or three rounds at them. Lee, who was driving, eventually collided with another car. When the police arrived, Lee told them that he crashed because he was trying to escape the shooting. (*Id.* at 3.) Harris corroborated Lee's testimony. (*Id.* at 4.) Davis, however, testified at trial that when she, Lee, and Harris drove away from the scene, no black car followed them, and no one shot at them.[5] (*Id.*)

---

[5] Detective Conley, a detective who investigated the shooting, testified at trial that she interviewed Davis on the day of the shooting. Contrary to her trial testimony, Davis told Detective Conley that she saw a black car following them and heard gunshots. (*Id.* at 5.)

4

Richardson testified that at approximately 10:15 PM on the night of the shooting, she went to Pruitt's house where she stayed until approximately 11:00 AM the following day when Pruitt took her home. Richardson testified that she was awake the entire night except for about thirty or forty minutes and that Pruitt was asleep the entire time. Richardson also testified that Pruitt's mother, brother, and father were home. (*Id.* at 7.)

## II.     Procedural History

Following a jury trial, Pruitt was convicted of first-degree murder, attempted murder, and aggravated battery with a firearm. He was sentenced to a total of forty-five years' imprisonment. On appeal, the Illinois Appellate Court found that Pruitt had not received a fair trial based on the trial court's erroneous denial of Pruitt's motion to suppress evidence and the prosecutor's use of prejudicial plea-related statements. Accordingly, the appellate court reversed Pruitt's convictions and remanded for a new trial. (Exh. R at 1, 29–30.)

After a bench trial on remand, Pruitt was convicted of first-degree murder and aggravated battery with a firearm on May 5, 2006, and sentenced to thirty-nine years' imprisonment. (Dkt. 1 at 1.) On April 18, 2008, the Illinois Appellate Court affirmed the conviction, rejecting Pruitt's argument that the evidence was insufficient to sustain his conviction because the testimony of the State's witnesses was improbable and significantly impeached. (Exh. A at 12.) Pruitt did not timely file a petition for leave to appeal ("PLA") with the Illinois Supreme Court, but filed a motion for leave to file a PLA out of time; he raised one argument—that the State had failed to prove him guilty beyond a reasonable doubt. (*See* Exh. E.) The Illinois Supreme Court granted leave on January 27, 2009 (*see* Exh. F) but denied the petition on the merits on March 25, 2009. (Exh. G.)

Pruitt filed a *pro se* petition under the Illinois Post-Conviction Hearing Act, 725 Ill. Comp. Stat. 5/122-1 *et seq.*, on September 25, 2009. (Exh. P at 38.) In this petition, Pruitt claimed (1) that his trial counsel was ineffective for (a) failing to call a witness who would have contradicted the prosecution's eyewitness testimony, (b) not filing motions to suppress certain statements and his identification by eyewitnesses, and (c) agreeing to false stipulations; (2) that his appellate counsel was ineffective for (a) failing to argue that trial counsel was ineffective and (b) failing to raise any meritorious issue on appeal; (3) that he was not proven guilty beyond a reasonable doubt; (4) that he did not receive a fair trial because his alibi statement and misstatements of fact were improperly used against him; and (5) that the verdicts were inconsistent. (*Id.* at 39–40.) The trial court dismissed Pruitt's petition on November 6, 2009. (*Id.* at 100–01.) Pruitt, represented by counsel, appealed the dismissal of his petition for post-conviction relief. (Exh. I.) On August 18, 2011, the Illinois Appellate Court affirmed. (Exh. H.) Pruitt filed a *pro se* PLA on September 16, 2011. (Exh. M.) As he had in his post-conviction appeal, Pruitt raised only one claim—ineffective assistance of trial counsel. (*Id.* at 3.) Specifically, Pruitt argued that his trial counsel mistakenly believed that his alibi statement was inadmissible and allowed prosecutors to use his statement to contradict the alibi statement of defense witness Richardson. (*Id.*) The Illinois Supreme Court denied the PLA on November 30, 2011. (Exh. L.)

## LEGAL STANDARDS

### I. Procedural Default

For a federal court to reach the merits of a petition for habeas corpus, the petitioner must have fully and fairly presented his claim to the state courts. *See O'Sullivan* v. *Boerckel*, 526 U.S. 838, 848, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). If the petitioner has failed to do so, and the

opportunity to raise the claim has passed, the claim is procedurally defaulted for the purposes of federal habeas review. *See id.* This means that prior to petitioning a federal court, a federal habeas petitioner must first "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. This may be achieved either on direct appeal or in post-conviction proceedings. *Lewis* v. *Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, the requirement of a complete round of state review is satisfied by appealing to the Illinois Appellate Court and filing a PLA to the Illinois Supreme Court. *See Boerckel*, 526 U.S. at 845–46.

"A federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Moore* v. *Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). Federal courts may, however, review a procedurally defaulted claim if the petitioner shows cause for the failure to raise the claim at the state level and actual prejudice resulting from the alleged violation of federal law. *Coleman* v. *Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Additionally, a procedurally defaulted claim is reviewable if failure to consider the claim would result in a "fundamental miscarriage of justice," such that it falls within the "narrow class of cases . . . when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey* v. *Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

II.     **Standard of Review**

If a claim is not procedurally defaulted or if the procedural default is excused, the Antiterrorism and Effective Death Penalty Act ("AEDPA") permits a federal court to grant a petition for a writ of habeas corpus for any claim adjudicated on the merits in the state court if

7

the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court]," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Bell* v. *Cone*, 543 U.S. 447, 452–53, 125 S. Ct. 847, 160 L. Ed. 2d 881 (2005) (quoting *Williams* v. *Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). For purposes of habeas relief, a state court's decision is considered reasonable so long as "fairminded jurists could disagree" on the outcome. *Yarborough* v. *Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004); *see also Hardaway* v. *Young*, 302 F.3d 757, 762 (7th Cir. 2002) ("A state court decision must be more than incorrect from the point of view of the federal court . . . which means something like lying well outside the boundaries of permissible differences of opinion."); *Schultz* v. *Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is 'minimally consistent with the facts and circumstances of the case.'" (quoting *Schaff* v. *Snyder*, 190 F.3d 513, 523 (7th Cir. 1999))).

For claims of ineffective assistance of counsel, the standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) governs whether counsel's performance is constitutionally effective. *See Harrington* v. *Richter*, 562 U.S. 86, 92, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). *Strickland* dictates that a court must consider (1) whether counsel's representation fell below an objective standard of reasonableness and (2) whether there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have

been different.  *Strickland*, 466 U.S. at 687–88, 694.  This standard is viewed through the lens of § 2254(d)(1)'s "contrary to" or "unreasonable application of" provisions:  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.  A habeas petitioner "must do more than show he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance . . . . [H]e must show that the [Illinois Appellate Court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  *Emerson* v. *Shaw*, 575 F.3d 680, 685 (7th Cir. 2009) (alterations in original) (quoting *Bell* v. *Cone*, 535 U.S. 685, 698–99, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)).

## ANALYSIS

In his petition, Pruitt claims (1) that there was insufficient evidence to find him guilty beyond a reasonable doubt; (2) that trial counsel was ineffective for (a) incorrectly believing that Pruitt's alibi statement contradicting a defense witness's testimony was inadmissible and (b) entering into a false stipulation regarding the testimony of a detective about his interview with a defense witness; (3) that he was denied the right to a fair trial because the trial judge relied on clearly erroneous findings of fact; and (4) that there were inconsistent verdicts.  (Dkt. 1 at 8.)

### I. Procedural Default:  Failure to Fully and Fairly Present Claims 2(b), 3, and 4 to the State Appellate Courts

Pruitt raised claims 2(b), 3, and 4 in his post-conviction petition but did not raise them in his ensuing appeal or post-conviction PLA.  (Exh. P at 39–40; Exh. I at 4; Exh. M at 3.)  Because Pruitt did not raise claims 2(b), 3, and 4 throughout one full round of state-court review, they are procedurally defaulted.

Pruitt's failure to raise these claims on appeal or in post-conviction proceedings is not saved by the exceptions to procedural default. Pruitt has not "demonstrate[d] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[d] that failure to consider the claims will result in a fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750. Pruitt has not even attempted to assert cause to excuse the default. *See Crockett* v. *Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (stating that because petitioner failed to argue either that there was cause and prejudice or that there would be a fundamental miscarriage of justice, the court could not consider his claim).

Further, Pruitt does not fall under the narrow exception set forth in *Martinez* v. *Ryan*, --- U.S. ---, 132 S. Ct. 1309, 1315, 182 L. Ed. 2d 272 (2012). Under *Martinez*, a petitioner's procedural default on an ineffective assistance of trial counsel claim may be excused if "(1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law *requires* that an ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." *Trevino* v. *Thaler*, --- U.S. ---, 133 S. Ct. 1911, 1918, 185 L. Ed. 2d 1044 (2013) (quoting *Martinez*, 132 S. Ct. at 1318–21) (emphasis and alterations in original) (internal quotation marks omitted).

*Trevino* clarified the fourth *Martinez* prong by holding that the *Martinez* exception to procedural default still applies if state law allows a defendant to raise an ineffective assistance of trial counsel on direct appeal because, due to "the [judicial] procedure system['s] . . . structure, design, and operation," the law "does not offer most defendants a meaningful opportunity to

present a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 1921. In Illinois, a claim for ineffective assistance of counsel may be raised on direct appeal. *See People* v. *Miller*, 988 N.E.2d 1051, 1062, 2013 IL App (1st) 111147, 370 Ill. Dec. 695 (2013) (citations omitted). Thus, the *Martinez* exception is inapplicable to federal habeas corpus petitions filed by Illinois prisoners. *See Diaz* v. *Pfister*, No. 12 C 286, 2013 WL 4782065, at *10 (N.D. Ill. Sept. 4, 2013); *Turner* v. *Harrington*, No. 11 C 7771, 2013 WL 2296189, at *14 (N.D. Ill. May 24, 2013). Because no exceptions exist to excuse the procedural default of claims 2(b), 3, and 4, the court declines to review them.

## II. Merits Review of Claims 1 and 2(a)

Because Pruitt raised claims 1 and 2(a) throughout one full round of state review, the court will decide the merits of these claims.[6]

### A. Claim 1

In claim 1 of his habeas petition, Pruitt asserts that there was insufficient evidence to find him guilty beyond a reasonable doubt. (Dkt. 1 at 8.) The Illinois Appellate Court correctly reviewed this claim "by viewing the evidence in the light most favorable to the prosecution, and determining whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." (Exh. A at 8); *see also Jackson* v. *Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *People* v. *Cunningham*, 818 N.E.2d 304, 308, 212 Ill. 2d 274, 288 Ill. Dec. 616 (2004). This standard of review applies to both jury trials and bench trials. *United States* v. *Wasson*, 679 F.3d 938, 949 (7th Cir. 2012).

---

[6] Pruitt raised claim 1 through one full round of state review on direct appeal. (Exh. B at 4; Exh. E at 3.) Likewise, he raised claim 2(a) through one full round of post-conviction proceedings. (Exh. P at 39–40; Exh. I at 4; Exh. M at 3.)

The appellate court found that the evidence at trial was sufficient to prove Pruitt guilty beyond a reasonable doubt. (Exh. A at 9.) The appellate court explained that, among other persuasive evidence, the trial court found Harris to be a "credible and . . . very discerning witness" and found any inconsistencies in her testimony to be minor. (*Id.* at 9–10.) Although Pruitt pointed to inconsistencies between Harris's and Lee's testimony, the appellate court found that it could not say that the trial court erred in resolving inconsistencies in Harris's favor. (*Id.* at 10.) The appellate court additionally noted that "the trial court found [Pruitt] guilty even with 'Lee out of the mix altogether.'" (*Id.* at 9.)

Moreover, the appellate court deferred to the trial court's finding that Grant's and Jackson's prior statements and grand jury testimony, in which they both identified Pruitt as a shooter, were credible. (*Id.* at 11.) The appellate court further explained that although Grant's and Jackson's trial testimony differed from their prior accounts of the occurrence, "the trial court was entitled to determine when, if ever they testified truthfully. The [trial] court could have found their prior account to be credible." (*Id.*) Further, the appellate court reiterated the trial court's observation that a witness's testimony cannot be rejected as incredible merely because that witness is a felon. Accordingly, the appellate court found that the trial court did not err in its findings of witness credibility. (*Id.* at 12.)

The appellate court affirmed Pruitt's conviction because, "when viewed in the light most favorable to the State, the evidence was sufficient to prove [Pruitt] guilty beyond a reasonable doubt." (*Id.* at 9.) The Illinois Appellate Court's application of the Supreme Court precedent in *Jackson* was not objectively unreasonable. For these reasons, Pruitt is not entitled to habeas relief on claim 1.

### B.     Claim 2(a)

In claim 2(a) of his habeas petition, Pruitt asserts that trial counsel was ineffective for incorrectly believing that Pruitt's alibi statement contradicting a defense witness's testimony was inadmissible. (Dkt. 1 at 8.) As noted above, the standard set forth in *Strickland* governs whether counsel's performance is constitutionally effective. *See Harrington*, 562 U.S. at 92. Under *Strickland*, a petitioner must prove (1) that his counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 694. A petitioner is only entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. A habeas petitioner "must do more than show he would have satisfied *Strickland*'*s* test if his claim were being analyzed in the first instance . . . . [H]e must show that the [reviewing court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Emerson*, 575 F.3d at 685 (first two alterations in original) (quoting *Cone*, 535 U.S. at 698–99).

On post-conviction review, the Illinois Appellate Court found that Pruitt's trial counsel erroneously believed that, on direct appeal from Pruitt's first trial, the appellate court had ruled that all of Pruitt's custodial statements, including his alibi statement of December 13, 1999, were inadmissible as violating his Fifth Amendment rights. (Exh. H ¶ 21.) The appellate court had suppressed all of Pruitt's statements made after mid-morning on December 14, 1999, but this did

13

not include Pruitt's alibi statement, which detectives had lawfully attained. (*Id.*) Because of this error, the appellate court on post-conviction review found that "under the first prong of *Strickland*, it was arguable that defense counsel's performance was so deficient that it fell below a standard of reasonableness where counsel advanced an alibi defense without being aware the testimony of the alibi witness could be rebutted by defendant's prior alibi statement." (*Id.* ¶ 22.)

The appellate court found that even if Pruitt met the first *Strickland* prong, Pruitt could not meet the second prong because he did not establish how he was prejudiced by counsel's action in advocating the alibi defense. (*Id.* ¶ 23.) The appellate court further explained that

> [t]he only alternative to the alibi defense would have been to present no defense at all and attempt merely to attack the strength of the State's case. However, the State had presented a strong case that defendant was one of the shooters. Where the identification of the defendant constitutes the central question in a criminal prosecution, the testimony of even a single witness who had an ample opportunity to observe is sufficient to support a conviction.

(*Id.* (citation omitted).) Because "the evidence of [Pruitt's] guilt was overwhelming," the appellate court concluded that the trial court's summary dismissal of Pruitt's post-conviction petition was not in error. (*Id.*) The Illinois Appellate Court's application of Supreme Court precedent in *Strickland* was not objectively unreasonable. Accordingly, claim 2(a) is denied.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing § 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should issue. Under 28 U.S.C. § 2253(c),

> (1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, *and* an antecedent non-constitutional issue independently is

14

substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal.

*Davis* v. *Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003) (internal citations omitted).

For the reasons stated above, the court finds that there can be no showing of a substantial constitutional question for appeal, as reasonable jurists would not find this court's ruling debatable.

## CONCLUSION AND ORDER

For the foregoing reasons, Pruitt's petition for a writ of habeas corpus (dkt. 1) is denied. The court declines to certify any issues for appeal.

Date: August 26, 2015

_____
United States District Judge